IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ARAB AMERICAN INSTITUTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 18-cv-0871 (ABJ) |
| v. | ) | |
| | ) | |
| OFFICE OF MANAGEMENT AND BUDGET, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN
<u>SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036

*Attorneys for Plaintiff
Arab American Institute*

## INTRODUCTION

The parties are before the Court in this Freedom of Information Act ("FOIA") litigation under somewhat unique circumstances that hinge, significantly, on the interpretation of the word "decision." As defendant Office of Management and Budget ("OMB") would have it, a decision requires a formal published action or deviation from the status quo. Merely maintaining a policy cannot, under that rubric, constitute an agency decision for purposes of the FOIA, even where the agency considered an alternative but declined to adopt it. Plaintiff, Arab American Institute ("AAI"), respectfully disagrees. In the circumstances of this case—particularly where the failure to act forced a default determination that there would be no change to the U.S. Census Bureau standards—a "decision," as applicable in the FOIA context, has occurred.

AAI respectfully submits this memorandum of law in support of its opposition to OMB's motion for summary judgment, and its cross-motion for summary judgment. Summary judgment in favor of OMB is not warranted, considering its failure to demonstrate that the withheld documents are exempt under 5 U.S.C. § 522(b)(5) ("Exemption 5"). Because OMB has not satisfied its obligations, this Court must grant Plaintiff's motion for summary judgment, and order all documents at issue be produced. In the alternative, and given the unique facts of this case, *in camera* review by the Court of the nine documents at issue is appropriate.

## FACTUAL BACKGROUND

AAI served as an advocate on behalf of the Arab American community, including advocating on its behalf as a U.S. Census Bureau ("Census Bureau") Census Information Center ("CIC") partner. AAI actively participated as a CIC partner in the lead up to the 2020 Census as the Census Bureau considered adding the a Middle Eastern or North African ("MENA") category to the 2020 Census. After years of study, it appeared that the 2020 Census would

1

include the MENA category. Indeed, the Census Bureau itself observed in 2017 that "it is optimal to use a dedicated 'Middle Eastern or North African' response category." U.S. Census Bureau, "2015 National Content Test Race and Ethnicity analysis Report: A New Design for the 21st Century" (Feb. 28, 2017) at xiii (*available at* https://www2.census.gov/programs-surveys/decennial/2020/program-management/final-analysis-reports/2015nct-race-ethnicity-analysis.pdf). Nonetheless, on January 26, 2018, the Census Bureau decided that it would not include a separate MENA category.

To understand OMB's rationale for its about face, Plaintiff submitted its FOIA Request on February 18, 2018 and requested expedited processing. OMB not only denied Plaintiff's expedited request to produce documents, it did not produce documents by the statutory deadline. Thus, litigation ensued. After OMB finished it court-ordered production, Plaintiff attempted to negotiate with OMB regarding withheld documents without success. Plaintiff now seeks a limited subset of withheld documents it believes are documents evidencing OMB's policy decision on the MENA question.

Plaintiff also incorporates herein the attached Plaintiff's Response to Defendant's Statement of Facts and Own Statement of Material Facts to Which There is No Genuine Issue.

## ARGUMENT

### I. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In the FOIA context, a district court reviewing a motion for summary judgment conducts a de novo review of the record, and the responding federal agency bears the burden of proving that it has

complied with its obligations under the FOIA." *Conservation Force v. Jewell*, 66 F. Supp. 3d 46, 55 (D.D.C. 2014) (citing 5 U.S.C. § 552(a)(4)(B)). "The court must analyze all underlying facts and inferences in the light most favorable to the FOIA requester." *Id.* "Accordingly, summary judgment for an agency is only appropriate if the agency proves that it has 'fully discharged its [FOIA] obligations[.]'" *Id.* (quoting *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996)).

The agency's "FOIA obligations" include a showing that the withheld documents are exempt from disclosure. *See Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980); *see also Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) (for a plaintiff to prevail, there must be a showing that the agency improperly withheld the agency records). The burden to prove the matter is exempted from disclosure remains with the agency. 5 U.S.C. § 522(a)(4)(b); *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992).

The agency must "disclos[e] as much information as possible without thwarting the exemption's purpose," *King v. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987), and "include more than a 'broad categorical description[,]' which would not allow 'a reviewing court to engage in a meaningful review of the agency's decision.'" *Conservation Force*, 66 F. Supp. 3d at 57 (quoting *Hall v. Dep't of Justice*, 552 F. Supp. 2d 23, 27 (D.D.C. 2008)). A mere recitation by the agency of the statutory standards is insufficient. *Carter v. U.S. Dep't of Commerce*, 830 F. 2d 388, 392-93 (D.C. Cir. 1987); *see also Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 89 (requiring more than "bare legal conclusions regarding the exemptions relied upon by [the agency] to justify the withholding"); *King*, 830 F.2d at 219 (noting that an agency cannot survive summary judgment by providing statements that are "conclusory, merely reciting statutory standards, or if they are too vague or sweeping" (citation omitted)).

## II. BECAUSE OMB HAS FAILED TO SATISFY ITS OBLIGATIONS, SUMMARY JUDGMENT FOR OMB SHOULD BE DENIED, SUMMARY JUDGMENT FOR PLAINTIFF SHOULD BE GRANTED, AND OMB SHOULD BE ORDERED TO PRODUCE THE DOCUMENTS

OMB recognizes—as it must—that it bears the burden of proving that withheld materials are exempt from disclosure under FOIA and that summary judgment is only appropriate "after the agency proves that it has fully discharged its FOIA obligations." Mem. at 2 (quoting *Ryan v. Fed. Bureau of Investigation.*, 174 F. Supp. 3d 486, 490 (D.D.C. 2016)); 5 U.S.C. § 552(a)(4)(b); *Petroleum Info. Corp.*, 976 F.2d at 1433.[1]

The parties agree that this dispute is based on whether OMB may withhold under Exemption 5 the following nine documents:

| Document ID | Production Date | Page Count | Document Date | Title |
|---|---|---|---|---|
| OMB183FY18176_000003025 | No. 5 - 02/22/2019 | 19 | 11/16/2017 | Final Report of IWG 20170823.docx |
| OMB183FY18176_000003027 | No. 5 - 02/22/2019 | 6 | 11/16/2017 | Director Memo Race Ethnicity 20170823.docx |
| OMB183FY18176_000000702 | No. 4 - 10/15/2018 | 1 | 6/14/2017 | MENA Final Report Outline.docx |
| OMB183FY18176_000001710 | No. 4 – 10/25/2018 | 8 | 6/23/2017 | RE: MENA Subgroup Outline for IWG Final Report |
| OMB183FY18176_000000339 | No. 5 - 02/22/2019 | 1 | 8/23/2017 | R/E IWG – Final Report |
| OMB183FY18176_000000752 | No. 5 - 02/22/2019 | 6 | 11/3/2017 | Revised Draft FRN on Race Standard 20171103_np.docx |
| OMB183FY18176_000000321 | No. 5 - 02/22/2019 | 36 | 3/6/2018 | Scenario 1 – OMB Decision Webinar – OMB Does NOT Make revisions – 110717.pptx |
| OMB183FY8176_000000764 | No. 5 – 02/22/2019 | 25 | 11/1/2017 | Scenario 2 – OMB Decision Webinar – OMB Does Makes[sic] revision.pptx |
| OMB183FY18176_0000003026 | No. 5 – 02/22/2019 | 17 | 11/16/2017 | Proposed FRN and Revised Standard 20170823.docx |

In withholding the nine documents, OMB has not provided a sufficient basis to establish that it has discharged its FOIA obligations. The inadequacies in OMB's motion are highlighted by two overarching issues. First, for four of the documents, OMB provided no information at all to

---

[1] As OMB notes (Mem. at 3), the adequacy of Defendant's searches is not in dispute on these cross motions. The only issue is the propriety *vel non* of OMB's Exemption 5 withholdings.

4

justify withholding the information. This is inadequate on its face. Second, for all nine documents, OMB relies on a false premise as to what constitutes a "decision" for purposes of Exemption 5. Each are addressed below.

> A. *OMB's Failure to Provide Adequate Detail as to Four Documents is Fatal to Its Motion*

In examining whether an agency has satisfied its burden to prove that a withholding properly falls within the ambit of an applicable FOIA exemption, the Court may rely on declarations of agency employees. *White v. U.S. Dep't of Justice*, 840 F. Supp. 2d 83, 89 (finding the agency declaration that adequately described the methods utilized to comply with the FOIA request sufficient to make a determination on motion for summary judgment). Such reliance, however, is appropriate only where the "declarations describe 'the documents and the justification for nondisclosure with reasonably specific detail, demonstrate the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). Even a cursory examination of OMB's proffered declaration shows that this burden has not been met for four of the documents at issue.

In support of its motion, OMB has submitted the Declaration of Heather V. Walsh (ECF 32-2), Deputy General Counsel at OMB (the "Walsh Declaration"). The 25-paragraph, 11-page Walsh Declaration, with a nine-page *Vaughn* Index, fails to address whatsoever four of the documents at issue here (OMB183FY18176_000003025, _000003027, _000001710, and _000000339). Each is discussed below.

    **i. OMB183FY18176_000003025**

OMB describes this document as:

| Document ID | Production Date | Page Count | Document Date | Title |
|---|---|---|---|---|
| OMB183FY18176_000003025 | No. 5 – 02/22/2019 | 19 | 11/16/2017 | Final Report of IWG 20170823.docx |

Summary chart (Mem. at 3). Yet, at no point in OMB's motion or accompanying papers is this document discussed (other than its inclusion in this chart). Significantly, OMB's *Vaughn* Index does not include this document.[2] Accordingly, OMB has offered no particularized factual basis on which the Court can evaluate the merits of OMB's withholding of this document.

**ii. OMB183FY18176_000003027**

OMB describes this document as:

| Document ID | Production Date | Page Count | Document Date | Title |
|---|---|---|---|---|
| OMB183FY18176_000003027 | No. 5 – 02/22/2019 | 6 | 11/16/2017 | Director Memo Race Ethnicity 20170823.docx |

Summary chart (Mem. at 3). With respect to this document, OMB provides that:

> On August 23, 2017, the draft of the IWG report was shared with OIRA Administrator Neomi Rao in an e-mail requesting her views by September 8, 2017, and including additional deliberative comments about the drafts, which were redacted in OMB's production. *See* App'x A, Document ID No. 003027.

Mem. at 8. However, the *Vaughn* Index shows that this document, too, is omitted entirely.[3] Without an adequate agency declaration, OMB has offered insufficient factual basis on which the Court can evaluate the merits of OMB's withholding of this document.

**iii. OMB183FY18176_000001710**

OMB describes this document as:

| Document ID | Production Date | Page Count | Document Date | Title |
|---|---|---|---|---|
| OMB183FY18176_000001710 | No. 4 – 10/25/2019 | 8 | 6/23/2017 | RE: MENA Subgroup Outline for IWG Final Report |

[2] Attachment A, at 9, does include OMB183FY18176_000003850, which purports to be a document consisting of the same number of pages and the same title, but with a different date. Because the document was withheld in full, and has a different ID number, it is impossible to determine if this is the same document.
[3] Attachment A, at 9, does include OMB183FY18176_000003855, which purports to be a document consisting of the same number of pages and the same title, but with a different date. Because the document was withheld in full, and has a different ID number, it is impossible to determine if this is the same document.

Summary chart (Mem. at 3). With respect to this document, OMB provides that "[i]n advance of the IWG's June 9, 2017, meeting, OMB staff circulated draft materials to be discussed during the meeting. See App'x A, Document ID Nos. 000458, -1710." Mem. at 7. But there is no mention of this document in the Walsh Declaration or the *Vaughn* Index. Rather, the Vaughn Index skips from document -1428 to document -1711. *See* App'x A at 4. Without an adequate agency declaration, OMB has offered an insufficient factual basis on which the Court can evaluate the merits on of OMB's withholding of this document.

### iv.     OMB183FY18176_000000339

OMB describes this document as:

| Document ID | Production Date | Page Count | Document Date | Title |
|---|---|---|---|---|
| OMB183FY18176_000000339 | No. 5 – 2/22/2019 | 1 | 8/23/2017 | R/E IWG – Final Report |

Summary chart (Mem. at 3). This document is not addressed or referenced in the Walsh Declaration or the *Vaughn* Index.

Summary judgment in favor of OMB is not appropriate as to these four documents, given the lack of any supporting information from OMB establishing the basis for the exemption. Not one of these documents is addressed in the Walsh Declaration or the *Vaughn* Index, as required by law. *See, e.g., Defenders of Wildlife*, 623 F. Supp. 2d at 99 (stating that the agency must "provide a detailed description of the information withheld through the submission of a so-called 'Vaughn Index'"). Rather than disclosing "as much information as possible" *King v.*, 830 F.2d 210, 224 (D.C. Cir. 1987), OMB has provided no details or other information about the documents to warrant withholding them under FOIA.

Simply put, this approach hamstrings the Court from "engag[ing] in a meaningful review of the agency's decision." *Conservation Force*, 66 F. Supp. 3d at 57 (quoting *Hall*, 552 F. Supp.

7

2d at 27). OMB's motion fails as a matter of law as to these four documents and judgment should be entered in favor of Plaintiff.[4]

  B.  *OMB Misconstrues the Application of Exemption 5 as to All Nine Documents*

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in ligation with the agency." 5 U.S.C. § 552(b)(5).[5] This exemption protects disclosure of certain documents that would otherwise be considered privileged in the civil discovery context, including materials protected under the deliberative process privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). This privilege can operate to protect agency documents, if they are "both predecisional and deliberative." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006). OMB has cited Exemption 5, albeit improperly, to withhold in full the nine documents at issue.

The question before the Court is what constitutes a decision for purposes of Exemption 5 in the context of a self-effectuating process, such as a census? OMB, for its part, submits that:

> To date, OMB has not publicly released a decision regarding the standards, in the Federal Register or in any other way. Since this decision-making process was never concluded, all inter- and intra-agency deliberations regarding these matters during the time of the search qualify for the deliberative process privilege.

Walsh Declaration ¶ 15. However, this premise, fundamental to OMB's entire approach to Exemption 5, is logically and legally flawed. Publication in the Federal Register or formal adoption of a policy is not the only manner in which an agency reaches a "decision." Rather, the

---

[4] As noted, *supra* n. 2-3, similar seeming documents may be included in the *Vaughn* Index, but it is impossible to tell. If the dates are incorrect, or some other clarification is needed, OMB should provide that to the Court and Plaintiff forthwith. As the Seventh Circuit colorfully advised, "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955 (1991). Plaintiff respectfully submits that it, too, should not be tasked with combing through OMB's *Vaughn* Index to divine the agency's intentions.

[5] Plaintiff is not challenging any Exemption 6 redactions, and therefore does not address section I.B of OMB's memorandum.

8

determination not to act can, under certain circumstances, be a decision for purposes of Exemption 5. Such is the case here.

There has been a decades-long push for the Census process to include collection of more detailed data on people with roots in the Middle East and North Africa (i.e., inclusion of a MENA category). Indeed, the Census Bureau itself observed in 2017 that "it is optimal to use a dedicated 'Middle Eastern or North African' response category." U.S. Census Bureau, "2015 National Content Test Race and Ethnicity analysis Report: A New Design for the 21st Century" (Feb. 28, 2017) at xiii (*available at* https://www2.census.gov/programs-surveys/decennial/2020/program-management/final-analysis-reports/2015nct-race-ethnicity-analysis.pdf). Nonetheless, on January 26, 2018, the Census Bureau decided that it would not include a separate MENA category.

Indeed, a memorandum from Albert E. Fontenot, Jr., Associate Director for Decennial Census Programs, entitled "Using Two Separate Questions for Race and Ethnicity in 2018 End-to-End Census Test and 2020 Census," states: "This memorandum documents the 2020 Census Program *decision* to continue to use two separate questions for collecting data on race and ethnicity . . ." Ex. 1 to Plaintiff's Statement of Facts at 1 (emphasis added). Further, the memorandum acknowledges that the decision was self-effectuating: "The Census Bureau needed to make a decision on the design of the race and ethnicity questions by December 31, 2017 in order to prepare 2020 Census programs, and deliver the final 2020 Census question wording to Congress by March 31, 2018." *Id.* Most critically to this case is the ultimate paragraph of the memorandum that bears the heading "Decision." In relevant part, it concludes that the "decision" includes not using "a separate 'Middle Eastern or North African' category on the census form." *Id.* at 2.

9

It is difficult to imagine more definitive evidence that a decision was made, when it was made, and what the decision was. Nonetheless, the Walsh Declaration contends, at ¶ 15, that the issue here is "deliberations regarding OMB's decision to make potential revisions to the Race and Ethnicity Data Standards." Despite deliberation regarding *potential* changes, and as Mr. Fontenot's memorandum declares, the *decision* was made to adhere to the status quo, meaning that the standards regarding race and ethnicity questions would remain unchanged from the 1997 format. Moreover, the decennial census is already proceeding. Electing to proceed with the census in a particular manner is a decision, even if the election is to proceed consistently with prior periods. There is no basis to assert that a Federal Register Notice regarding the agency's opinion on the recommendations of the IWG is a prerequisite for a "decision." "Moreover, under OMB's formulation of what constitutes a "decision," an agency would be able to shield from the public a broad array of ultimate agency determinations by simply delaying or withholding publication in the Federal Register.

Further, examination of the documents at issue shows just how broad OMB's proffered application of Exemption 5 extends. It is axiomatic that simply marking a document "draft" does not *ipso facto* invoke the deliberative process privilege. *See Wilderness Soc'y v. Dep't of Interior*, 344 F. Supp. 2d 1, at 14 ("The District of Columbia Circuit has made clear that simply designating a document as a 'draft' does not automatically make it privileged under the deliberative process privilege.") (citing *Arthur Anderson & Co. v. IRS*, 679 F.2d 254, 257 (D.C. Cir. 1982)). *See also Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (holding that a document which is in draft form cannot be withheld as predecesional if it is later "adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public."). As a consequence, a document that "does not reflect the

10

genuine evolution of an agency's decisionmaking process and instead merely recites 'factual information which does not bear on [ ] policy information,' is not entitled to protection under the deliberative process." *Conservation Force*, 66 F. Supp. 3d at 60 (quoting *Wilderness Soc'y*, 344 F. Supp. 2d at 14).

Here, the documents at issue are titled:[6]

- "Final Report of IWG 20170823.docx"
- "Director Memo Race Ethnicity 20170823.docx"
- "MENA Final Report Outline.docx"
- "RE: MENA Subgroup Outline for IWG Final Report"
- "R/E IWG – Final Report"
- "Revised Draft FRN on Race Standard 20171103_np.docx"
- "Scenario 1 – OMB Decision Webinar – OMB Does NOT Make revisions – 110717.pptx"
- "Scenario 2 – OMB Decision Webinar – OMG Does Makes [sic] revision.pptx"
- Proposed FRN and Revised Standard 20170823.docx"

For those documents that *are* included in OMB's *Vaughn* Index, the proffered reason for withholding is:

> FOIA Exemption b(5) - Internal Deliberative Drafts. Withheld draft documents in the process of revision that do not reflect final agency decisions but are part of a decisionmaking process regarding the Standards for Maintaining, Collecting, and Presenting Federal Data on Race and Ethnicity.

This is precisely the type of "mere recitation of the statutory standards" that courts find insufficient. *See Carter*, 830 F.2d at 392–93; *see also Defenders of Wildlife*, 623 F. Supp. 2d at

---

[6] Title is not dispositive, of course.

11

89 (requiring more than "bare legal conclusions regarding the exemptions relied upon by [the agency] to justify the withholding"); *King*, 830 F.2d at 219 (noting that an agency cannot survive summary judgment by providing statements that are "conclusory, merely reciting statutory standards, or if they are too vague or sweeping") (citation omitted).

The Walsh Declaration provides little more detail as to these specific documents. Although it makes a sweeping and broad description of the IWG process, the apparent underlying assertion is similar to the *Vaughn* Index—namely these are drafts that were in the process of revision and no decision was ever published. However, this does not clarify whether the information was factual in nature versus recommendations on how to proceed. *Cf. Conservation Force*, 66 F. Supp. 3d at 60. Further, for specific documents marked "final" it is unclear whether they reflect the final agency decision to maintain the status quo with respect to the Census questionnaire. To the extent such documents embody the final agency decision, they are not protected. *See Coastal States Gas Corp.*, 617 F. 2d at 866.[7]

By the very nature of the documents' titles, and without further clarification from Defendant, the Court is without necessary information to conclude that OMB's burden has been satisfied. The documents should be ordered produced.[8]

---

[7] The tension in OMB's position is particularly apparent from two specific documents: "Scenario 1 – OMB Decision Webinar – OMB Does NOT Make revisions – 110717.pptx" and "Scenario 2 – OMB Decision Webinar – OMG Does Makes [sic] revision.pptx." These documents, based on their titles, reflect two scenarios, one in which a revision is made and one in which the status quo is maintained. As discussed above, the ultimate decision was to maintain the status quo, i.e., "Scenario 1." Given that the withheld document directly bears on the decision that was implemented, it is difficult to understand OMB's position that this does not reflect the ultimate final action. OMB seems to contend that both documents, that present opposite positions, are both predecisional when the decision is necessarily one *or* the other.

[8] OMB and the Walsh Declaration, in conclusory fashion, state that all reasonably segregable information has been disclosed. Because Plaintiff has little more than the documents' "issue date . . . and the briefest of reference to its subject matter," *Sen. of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987), it is impossible to address this assertion absent review of the actual documents.

12

C.      *Adoption and Incorporation May Further Justify Disclosure*

Even if a document is protected from disclosure under the deliberative process privilege, it may lose this protection if a final decision maker "chooses expressly to adopt or incorporate [it] by reference." *Sears, Roebuck & Co.*, 421 U.S. at 161. This concept, generally referred to as "adoption" and/or "incorporation," is applicable when an agency decisionmaker accepts the rationale or recommendation as the agency's policy. *See id.*; *Nat'l Day Laborer Organizing Network v. ICE*, 827 F. Supp. 2d 242, 252-53 (S.D.N.Y. 2011) (holding that recommendation of agency employee becomes adopted when agency accepts conclusion and rationale of recommendation as its own).

As relevant here, in a public 2020 Census Quarterly Program Management Review held on January 26, 2018, Karen Battle, chief of the Census Bureau's Population Division (and at the behest of Mr. Fontenot), explained:

> [W]e do feel that more research and testing is needed before we can proceed to implement or propose to implement a separate Middle Eastern or North African category . . . what we need to do is to do more research and testing where we're testing the ethnicity separately from the race question, and that's what we have not done.

*Available at* https://www.youtube.com/watch?v=4He025kOzJo&feature=youtu.be&t=24m49s (beginning at 24:49). To the extent that Ms. Battle's explanation about the need for more research, and indeed the entire underlying decision to maintain the status quo, is evidenced in the withheld documents, it has been adopted as the agency's policy. In other words, if the "final reports" addressed above specifically go to the issue of more research being necessary as a basis to make no changes, then the agency has referenced, adopted, and incorporated that material in the public statement of the agency's final decision. *See Coastal States Gas Corp.*, 617 F. 2d at 866 ("[E]ven if the document is predecisional at the time it is prepared, it can lose that status if it

13

is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public.").

## III. ALTERNATIVELY, THIS CASE PRESENTS PRECISELY THE TYPE OF CIRCUMSTANCES FOR WHICH *IN CAMERA* REVIEW IS APPROPRIATE

Alternatively, the Court should use its "broad discretion" to examine the documents *in camera* in determining "whether the agency has met its burden." *Loving v. DOD*, 550 F.3d 32, 41 (D.C. Cir. 2008) (citing *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 577-78 (D.C. Cir. 1996)); *see NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978) ("The in camera review provision is discretionary by its terms[.]"); *Mobley v. CIA*, 806 F.3d 568, 588 (D.C. Cir. 2015); *Larson v. Dep't of State*, 565 F.3d 857, 869-70 (D.C. Cir. 2009) (noting that "[i]n camera review is available to the district court if the court believes it is needed 'to make a responsible de novo determination on the claims of exception'").

*In camera* review is appropriate because, as described above, the agency is woefully short of meeting its burden of proof by means of a sufficiently detailed affidavit. Some of the withheld documents are not addressed at all. *Quiñon v. FBI*, 86 F.3d 1222, 1229 (D.C. Cir. 1996) ("[W]here an agency's affidavits merely state in conclusory terms that documents are exempt from disclosure, an in camera review is necessary."). *Cf. Life Extension Found., Inc. v. IRS*, 559 F. App'x 3, 3 (D.C. Cir. 2014) (finding that a District Court's declination of *in camera* review was not an abuse of discretion because "affidavits sufficiently described the material withheld").

Further, as this Court has noted, "*in camera* review may be appropriate" when "'the number of records is relatively small'" and "when the dispute turns on the contents of the documents, and not the parties' interpretations of the documents.'" *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 307 (D.D.C. 2007) (quoting *Elec. Privacy Info. Ctr. v. DHS*, 384 F. Supp. 2d 100, 119 (D.D.C. 2005)); *accord Quiñon*, 86 F.3d at 1228

14

(suggesting that number of documents is "another . . . factor to be considered" when determining whether in camera review is appropriate); *see also Elec. Privacy Info. Ctr. v. DOJ*, 584 F. Supp. 2d 65, 82-83 (D.D.C. 2008) (stating that in camera review is appropriate where agency affidavits are deficient with respect to segregability analysis and a relatively few number of documents are at issue).

Plaintiff respectfully submits that the facts of this case are precisely of the nature that justifies *in camera* review, should the Court determine that ordering production outright is not appropriate.[9]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's motion for summary, grant its cross-motion for summary judgment, and order production of all nine documents.

Dated: March 12, 2020                                Respectfully submitted,

                                                     BAKER HOSTETLER LLP
                                                     *Attorneys for Plaintiff*

                                                     By: /s/ *Allison Rochford*
                                                     Mark Bailen (D.C. Bar No. 459623)
                                                     Lindsay Holmes (D.C. Bar No. 1013559)
                                                     Allison Rochford (D.C. Bar No. 1500090)
                                                     Washington Square, Suite 1100
                                                     1050 Connecticut Avenue, N.W.
                                                     Washington, DC 20036
                                                     Tel.: 202-861-1500
                                                     Fax: 202-861-1783
                                                     arochford@bakerlaw.com

---

[9] The question of segregability is also appropriately addressed by *in camera* review. *See, e.g., ACLU v. DOD*, 543 F.3d 59, 85 (2d Cir. 2008) *vacated on other grounds*, 130 S. Ct. 777, 777 (2009); *Allard K. Lowenstein Int'l Hum. Rts. Project v. DHS*, 603 F. Supp. 2d 354, 360-61 (D. Conn. 2009); *Jefferson v. DOJ*, No. 01-1418, slip op. at 31 n.13 (D.D.C. Mar. 31, 2003); *Citizens Progressive Alliance v. U.S. Bureau of Indian Affs.*, 241 F. Supp. 2d 1342, 1359 (D.N.M. 2002).