## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                            )
ARAB AMERICAN INSTITUTE,                    )
                                            )
                    Plaintiff,              )
                                            )
          v.                                )          Civil Action No. 18-0871 (ABJ)
                                            )
OFFICE OF MANAGEMENT                        )
AND BUDGET,                                 )
                                            )
                    Defendant.              )
_____)

### <u>MEMORANDUM OPINION</u>

Plaintiff Arab American Institute has sued the Office of Management and Budget ("OMB")
under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*  Compl. [Dkt. # 1].
Plaintiff requested documents in connection with whether "Middle Eastern and North African"
would be included as a race reporting category on the 2020 Census.  OMB conducted a search and
released a number of records to plaintiff, but it withheld 161 documents in full pursuant to FOIA
Exemption 5.  Def.'s Statement of Undisputed Material Facts [Dkt. # 32-1] ("Def.'s SUMF") ¶ 6;
Pl.'s Statement of Undisputed Material Facts [Dkt. # 34-2] ("Pl.'s SUMF") at 1, ¶ 6.  At issue is
the withholding of five of those documents.

On January 31, 2020, defendant filed a motion for summary judgment.  Def.'s Mot. for
Summ. J. [Dkt. # 30]; Def.'s Corrected Mot. for Summ. J. [Dkt. # 32] ("Def.'s Mot.").  Plaintiff
opposed the motion and filed its own cross-motion for summary judgment on March 12, 2020.
Pl.'s Cross-Mot. for Summ. J. [Dkt. # 34] ("Pl.'s Cross-Mot.").  On July 24, 2020, the Court called
for the documents for *in-camera* review.  Min. Order (July 24, 2020).  Upon review of the parties'
briefs and the full record in the case, including the documents themselves, the Court will grant

defendant's motion for summary judgment and deny plaintiff's cross-motion for summary judgment.

## BACKGROUND

Plaintiff Arab American Institute serves as an advocate for the Arab American community, specifically within the political and civil spheres in the United States.  Pl.'s SUMF at 2, ¶ 1. Plaintiff also serves as a partner to the U.S. Census Bureau Census Information Center.  *Id.*  In that role, plaintiff "works on questions of classification of the Arab American community and encourages the [Census Bureau] to broaden its options pertaining to ancestry, race, and ethnicity." Compl. ¶ 7.

The Census Bureau is part of the U.S. Department of Commerce.  *Who We Are*, United States Census Bureau, https://www.census.gov/about/who.html (last visited Aug. 13, 2020).  OMB is part of the Executive Office of the President of the United States.  *See Office of Management and Budget*, White House, https://www.whitehouse.gov/omb/ (last visited Aug. 13, 2020).  OMB creates the standards for maintaining, collecting, and presenting federal data on race and ethnicity, *see Standards for Maintaining, Collecting, and Presenting Federal Data on Race & Ethnicity*, 81 Fed. Reg. 67,398-10 (Sept. 30, 2016), and the Census Bureau is required to adhere to the standards on race and ethnicity set by OMB.  *About*, United States Census, https://www.census.gov/topics/population/race/about.html (last visited Aug. 13, 2020).

To help make its decision on whether it should change the previous race and ethnicity standards to include a "Middle Eastern or North African" category, OMB formed an Interagency Working Group for Research on Race and Ethnicity ("IWG").  *See* Pl.'s FOIA Request, Ex. 1 to Declaration of Heather V. Walsh [Dkt. # 32-2] ("FOIA Request"); Declaration of Heather Walsh [Dkt. # 32-2] ("Walsh Decl."). ¶ 5.  As a Census Bureau Census Information Partner, plaintiff

"participated in and paid close attention to" OMB's years-long evaluation of adding this race category to its standards.  Pl.'s SUMF at 2, ¶ 2.

The Census Bureau needed to make a decision on the design of the race and ethnicity questions by December 31, 2017 in order to prepare for the 2020 Census.  Jan. 26, 2018 Census Program Memo., Ex. 1 to Pl.'s SUMF [Dkt. # 34-2].  That year, OMB did not revise its standards, and on January 26, 2018, the Census Bureau announced that the "Middle Eastern and North African" category would not be added to the 2020 Census.  *Id*. at 2.

On February 18, 2018, to better understand "OMB's inaction," Compl. ¶ 1, plaintiff submitted a FOIA request seeking records in "four specified categories relating to the work of OMB's [IWG] and the classification of a 'Middle Eastern or North African' . . . group as a distinct reporting category, or revisions to OMB's Standards for Maintaining, Collecting, and Presenting Federal Data on Race and Ethnicity."  Def.'s SUMF ¶ 2; Pl.'s SUMF at 1, ¶ 2; *see* FOIA Request at 2.  Plaintiff requested that the agency expedite its processing of the request.  FOIA Request at 5.

On February 21, 2018, OMB acknowledged receipt of plaintiff's FOIA request and assigned it OMB FOIA Number 2018-176.  Def.'s SUMF ¶ 3; Pl.'s SUMF at 1, ¶ 3.  On March 1, 2018, OMB started searching for responsive documents, Def.'s SUMF ¶ 4; Pl.'s SUMF at 1, ¶ 4, but it did not respond to the request to expedite processing, and it did not inform plaintiff within twenty working days that it would comply with the FOIA request by producing documents or indicate the scope of the documents that it would produce in accordance with 5 U.S.C. § 552(a)(6)(A)(i).  Pl.'s SUMF ¶¶ at 3, 6–7.  On April 13, 2018, plaintiff filed this lawsuit, *see* Compl., and on May 18, 2018, the Court ordered OMB to file a report setting forth a production schedule by June 15, 2018.  Order [Dkt. # 9].  The parties conferred, and they agreed that defendant

would review the collected documents at a rate of 300 documents per month.  Def.'s SUMF ¶ 6; Pl.'s SUMF at 1, ¶ 6.

OMB identified 291 responsive documents, and through seven productions and one supplemental production, it produced 131 of those documents in full or in part with redactions under the deliberative process privilege encompassed by FOIA Exemption 5.  OMB withheld the remaining 161 documents in full under the deliberative process privilege.  Def.'s SUMF ¶ 6; Pl.'s SUMF at 1, ¶ 6.

On January 31, 2020, defendant filed a motion for summary judgment, representing that the parties had narrowed the withholdings being challenged by plaintiff to nine documents, and arguing that it had lawfully withheld the nine documents pursuant to FOIA Exemption 5.  Def.'s Mot.  On March 12, 2020, plaintiff opposed the motion and filed a cross-motion for summary judgment.  Pl.'s Cross-Mot.; Pl.'s Cross-Mem. of Law in Supp. of Pl.'s Opp. to Def.'s Mot. & Pl.'s Cross-Mot. [Dkt. # 34-1] ("Pl.'s Cross-Mem.").  On May 13, 2020, the parties filed a joint status report stating that they had resolved their dispute as to four of the nine documents.  Joint Status Report [Dkt. # 38].

On July 24, 2020, the Court determined that *in-camera* review of the remaining five records would aid it in making a responsible, *de novo* ruling on defendant's claim that FOIA Exemption 5 was applicable.  *See Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978).  It ordered defendant to produce the documents at issue for inspection.  Min. Order (July 24, 2020).  Defendant complied with that order on July 31, 2020.  Notice [Dkt. # 43].

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

4

56(a).   The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).   To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial."   *Id.* at 324 (internal quotation marks omitted).   When the court is presented with cross-motions for summary judgment, it analyzes the underlying facts and inferences in each party's motion in the light most favorable to the non-moving party.   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

The mere existence of a factual dispute is insufficient to preclude summary judgment.   *Id.* at 247–48.   A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation.   *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

When considering a motion for summary judgment under FOIA, the court must conduct a *de novo* review of the record.   *See* 5 U.S.C. § 552(a)(4)(B).   The court may grant summary judgment based on information provided in an agency's affidavits or declarations when they are "relatively detailed and non-conclusory," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted), and "not controverted by either contrary evidence in the record nor by evidence of agency bad faith."   *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).   Such affidavits or declarations are "accorded a presumption of good faith, which cannot

be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard*, 926 F.2d at 1200 (citation and internal quotation marks omitted).

## ANALYSIS

FOIA requires government agencies to release records upon request in order to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). The statute provides that: "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person," 5 U.S.C. § 552(a)(3)(A), unless the records fall within one of nine narrowly construed exemptions. *See* § 552(b); *FBI v. Abramson*, 456 U.S. 615, 630–31 (1982). This framework "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003), citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). When an agency withholds documents or parts of documents, it must explain what it is withholding and specify the statutory exemptions that apply. *See Vaughn v. Rosen*, 484 F.2d 820, 825–28 (D.C. Cir. 1973).

In this case, defendant maintains that it "appropriately searched for and provided records responsive to the request at issue, subject to the withholding of certain information pursuant to" FOIA Exemptions 5 and 6. Def.'s Mot. at 3. Plaintiff is not challenging the adequacy of defendant's search or its application of FOIA Exemption 6. Pl.'s Cross-Mem. at 4 n.1, 8 n.5. Thus, there is no dispute of fact as to those issues, and the Court need not address them. *See Shapiro v. U.S. Dep't of Justice*, 239 F. Supp. 3d 100, 105–06 n.1 (D.D.C. 2017), citing *Winston*

*& Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016).   The Court will address the remaining issues – the validity of the assertion of FOIA Exemption 5 and the segregability requirement – below.

## I.       FOIA Exemption 5

Exemption 5 permits agencies to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5); *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).  A document may be properly withheld under Exemption 5 only if (1) its source is a government agency, and (2) it falls "within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Klamath*, 532 U.S. at 8.  FOIA "places the burden on the agency to sustain the lawfulness of specific withholdings in litigation." *Nat. Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000).

The exemption encompasses "protections traditionally afforded [to] certain documents pursuant to evidentiary privileges in the civil discovery context[,]" including the executive "deliberative process" privilege.  *Taxation with Representation Fund v. IRS*, 646 F.2d 666, 676 (D.C. Cir. 1981).  Defendant has withheld the records at issue in this case claiming that the deliberative process privilege applies to them.

"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Klamath*, 532 U.S. at 8–9 (citations omitted), quoting *NLRB v. Sears, Roebuck & Co.* ("*Sears*"), 421 U.S. 132, 151 (1975).  To

accomplish that goal, "[t]he deliberative process privilege protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 151 (D.C. Cir. 2006), citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).  A document is predecisional if "it was generated before the adoption of an agency policy," and deliberative if "it reflects the give-and-take of the consultative process." *Coastal States*, 617 F.2d at 866.  "[E]ven if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Id*.

Defendant withheld 161 documents in full pursuant to Exemption 5.  Plaintiff disputes defendant's invocation of Exemption 5 as it relates to five documents.  *Compare* Pl.'s Mem. at 4 *with* Joint Status Report [Dkt. # 38]; Pl.'s Reply in Supp. of Pl.'s Cross-Mot. [Dkt. # 41].  Those documents are:

1. OMB183FY18176_000000702, comprising one page dated 6/14/2017, entitled "MENA Final Report Outline.docx"

2. OMB183FY18176_000000752, comprising five pages dated 11/3/2017, entitled "Revised Draft FRN on Race Standard 20171103_np.docx"

3. OMB183FY18176_000000321, comprising thirty-six pages dated 3/6/2018, entitled "Scenario 1 – OMB Decision Webinar – OMB Does NOT Make revisions – 110717.pptx"

4. OMB183FY8176_000000764, comprising twenty-five pages dated 11/1/2017, entitled "Scenario 2 – OMB Decision Webinar – OMB Does Makes [sic] revision.pptx"

5. OMB183FY18176_0000003026, comprising seventeen pages, dated 11/16/2017, entitled "Proposed FRN and Revised Standard 20170823.docx"

The *Vaughn* Index provides that the 161 documents were withheld in full because they were "draft documents in the process of revision that do not reflect agency decisions but are part

of a decisionmaking process regarding the Standards for Maintaining, Collecting, and Presenting

Federal Data on Race and Ethnicity," and that the documents reflected "deliberations internal to

the Executive Branch regarding a then-pending decision concerning the Standards . . . that was

under consideration among staff of OMB at the time of the discussion." *See generally Vaughn*

Index, Appx. A to Walsh Decl. [Dkt. # 32-2].  Some of the documents consisted "entirely of

meeting agendas and points of discussion to be used during IWG's meeting."  *Id.*

    For the five documents at issue, the *Vaughn* index repeats the same reason for withholding

each of them:

> FOIA Exemption b(5) - Internal Deliberative Drafts. Withheld draft
> documents in the process of revision that do not reflect final agency
> decisions but are part of a decisionmaking process regarding the Standards
> for Maintaining, Collecting, and Presenting Federal Data on Race and
> Ethnicity. Disclosing material withheld or redacted due to the deliberative
> process privilege would inhibit the frank and candid expression of views
> and the sharing of information that are essential for OMB to carry out its
> responsibilities, and would greatly impair the free exchange of information,
> ideas and analysis within OMB, and between OMB and other agencies in
> the Executive Branch.

Revised *Vaughn* Index, Appx. A to Suppl. Walsh Decl. [Dkt. # 39-2].

    The declaration submitted by the agency supplies additional detail.  The declarant states

that the 161 documents consisted of "drafts of IWG meeting materials from March 2017," Walsh

Decl. ¶ 17; "[n]on-final drafts of a presentation deck regarding the IWG's work later revised before

being presented to a public audience at [a] March 2017 conference," *id.*; "deliberative discussions

of the drafts in accompanying email records," *id.* ¶ 18; "draft materials to be discussed during the

[June 29, 2017] meeting," *id.*; "draft materials and deliberative comments . . . circulated before

and after the IWG's July 10, 2017 meeting," *id.*; and "[t]he draft report, annexes, and other

accompanying material" *id.* ¶ 20.  The declarant avers that all the withheld records "were created

as part of a decision-making process conducted among staff in OMB in consultation with other Executive Branch agencies[.]"  *Id.* ¶ 22.

In connection with the five documents at issue, the agency's declarant stated that the first document was one of the "early drafts and outlines of IWG's recommendations" that OMB staff circulated within the agency in June of 2017.  Walsh Decl. ¶ 18.  The second and the fifth documents were "drafts of a Federal Register Notice that would have been intended to represent OMB's final decision regarding the recommendations of the IWG."  *Id.* ¶ 21.  OMB did not publish a federal register notice, and the declarant averred that "OMB has made no final decision regarding the IWG's recommendations."  *Id.*  Finally, the fourth document was withheld because it was a draft that was "not finalized or relied on by OMB" related to "materials for a planned 'webinar' event regarding OMB's potential decision regarding IWG's recommendations."  *Id.*

Based on the Court's *in-camera* review, as well as the information provided in the government's affidavits, the Court finds that the five documents at issue are both predecisional and deliberative, and therefore fall within FOIA Exemption 5.

The first document is a draft outline for IWG's final report to OMB regarding its findings. The document includes comments and questions about proposals to be included.  This record is predecisional because it precedes and considers the content of the formal submission of findings to OMB, and it is deliberative.  *See Coastal States*, 617 F.2d at 866 ("The exemption thus covers recommendations, draft documents, proposals, suggestions, and other subjective documents.").

The second and fifth documents are internal drafts of a federal register notice that was never published.  They include comments and blank spaces where information is to be filled in, and thus the documents are part of the "give-and-take of the deliberative process by which the decision itself is made."  *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975).

The third and fourth documents are draft presentations outlining potential recommendations and describing what the implementation of each would entail. These presentations reviewing alternative courses of action are also both predecisional and deliberative.

Because OMB has never publicly released a decision on whether to change the standards, the agency took the position that the "decision-making process was never concluded, [and] all inter- and intra-agency deliberations regarding these matters during the time of the search qualify for the deliberative process privilege." Walsh Decl. ¶ 15. Plaintiff contends that public release is not the defining feature of a "decision;" it submits that OMB made a decision when it elected not to revise its race standards, and that if the documents reflect that decision to maintain the status quo, they have lost their predecisional status. Pl.'s Cross-Mem. at 8–13.

While the decision not to take a particular action can constitute a final decision, *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1204 (D.C. Cir. 1991), defendant's declarant avers that no final agency action has been taken, and plaintiff points to no evidence to the contrary. Plaintiff argues that a final decision must have been made because the Census Bureau issued a statement announcing that it would not include the "Middle Eastern North African" category on the 2020 Census. Pl.'s Cross-Mem. at 9–10. But the fact that the Census Bureau did not include the category does not mean that OMB came to an end of its decision-making process on what *it* would recommend.

Furthermore, just because an agency has not made a decision does not strip records of their predecisional status. As the D.C. Circuit has observed:

> There may be no final agency document because a draft died on the vine. But the draft is still a draft and thus still pre-decisional and deliberative. . . . [T]o require release of drafts that never result in final agency action would discourage innovative and candid internal proposals by agency officials and thereby contravene the purposes of the privilege.

*Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014); *see, e.g.*, *Heartland All. For Human Needs & Human Rights v. U.S. Dep't of Homeland Sec.*, 291 F. Supp. 3d 69, 78–79 (D.D.C. 2018) ("A document may be predecisional even if a final decision is never reached.").

And, even if the agency had made an internal decision to maintain the status quo, the documents at issue would not lose their predecisional status because plaintiff has not shown that they have been "adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public."[1]   *Coastal States Gas Corp.*, 617 F.2d at 866; *Sears*, 421 U.S. at 161 ("[I]f an agency chooses expressly to adopt or incorporate by reference an intra-agency memorandum previously covered by Exemption 5 in what would otherwise be a final opinion" that memorandum may not be withheld under Exemption 5).   Plaintiff does not point to any public statements that OMB has made referencing, adopting, or incorporating the records or the subject matter at issue, nor has plaintiff provided the Court with any evidence that the records were informally adopted as the agency's position.   Plaintiff references a statement made by Karen Battle, chief of the Census Bureau's Population Division, on January 26, 2018, where she explained that additional research and testing were necessary before the Census Bureau could proceed to implement a separate Middle Eastern or North African category.   Pl.'s Cross-Mem. at 13.   Plaintiff argues that "[t]o the extent that Ms. Battle's explanation about the need for more research, and indeed the entire underlying decision to maintain the status quo, is evidenced in the withheld documents, it has been adopted as the agency's policy."   *Id.*   But, this statement was made by a Census Bureau official, not an OMB official.   And, in any event, the statement

---

[1]       Courts in this district have held that the plaintiff carries the burden to show that the agency has formally or informally adopted a record as policy.   *See, e.g.*, *Heffernan v. Azar*, 317 F. Supp. 3d 94, 122 (D.D.C. 2018), citing *Sec. Fin. Life Ins. Co. v. U.S. Dep't of Treasury*, No. 03-102, 2005 WL 839543, at *7 (D.D.C. Apr. 12, 2005).

demonstrates the ongoing nature of the inquiry – Ms. Battle states that the agency had not tested the category as an ethnicity separate from race, and that research still needs to be completed before the government makes its final decision. *See* U.S. Census Bureau, *1/26/18: 2020 Census Quarterly Program Management Review (PMR)*, Youtube (Jan. 26, 2018), https://www.youtube.com/watch?v= 4He025kOzJo&feature=youtu.be&t=24m49s.

The records are draft documents that lay out various recommendations and proposals, and disclosure of these documents "would 'discourage candid discussion within the agency.'" *Access Reports v. U.S. Dep't of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991), quoting *Dudman Commc'ns Corp. v. U.S. Dep't of Air Force*, 815 F.2d 1565, 1567–68 (D.C. Cir. 1987). Thus, defendant properly applied Exemption 5 to the documents and defendant's motion for summary judgment will be granted.

## II.     Segregability

The Court must make a segregability determination, even if not raised by the plaintiff. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007). While agencies must provide a detailed justification for withholdings, the Court will give a presumption of compliance to the agency in segregating material, *see Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977), but the plaintiff may overcome this by presenting evidence to the contrary. *Sussman*, 494 F.3d at 1117. The government explained that it conducted a "document-by-document review of all records [it] collected" to assess whether any information could be disclosed. Walsh Decl. ¶ 25. Plaintiff has not provided any evidence to the contrary. Thus, based on the government's affidavit and its *in-camera* review of the records, the Court finds that there was not any "factual or otherwise nonexempt information" that could be segregated and disclosed. *Id.*

**CONCLUSION**

For the foregoing reasons, the Court will grant defendant's motion for summary judgment, and it will deny plaintiff's cross-motion for summary judgment.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  August 13, 2020